Good morning. May it please the court, I'm Mike Jacobson. It's my privilege to represent Pam Mansfield in this important case of First Amendment retaliation. I'd like to reserve three minutes for rebuttal. There are two claims. One is the Westfall immunity, it's the intentional tort, and the second is the 1983 violation. There are three issues to be presented for the appeal. The first is the Westfall immunity issue. Did the court misapply the rule in Arthur and commit legal error to grant defendant Pfaff Westfall immunity when failing to resolve the material disputed issues of fact with formal findings? The disputed material which would controvert the finding that there was an unproven attack by Ms. Pfaff on that day. The court failed to make a finding whether the incident photos showed an injury or not. The court failed to make a finding that there was an 803 A6 Washington State authorized fact finder, Judge Michael Schwartz, who heard three days of testimony and found an assault at work occurred. The U.S. District Judge didn't find that it happened or not But isn't the problem that there's no issue about there isn't a material dispute of fact about who may have assaulted her? I believe you're referring to the reconsideration order which said that the court viewed there was no disputed issue of fact that could controvert the finding that this was an unproven attack by the person who was assaulted. I am. I think while the Washington State fact finder, Judge Schwartz, found that an attack at work happened, he said that he was not going to find out who'd done it. He said the Industrial Insurance Act doesn't require that of him and the hair on his neck stood up when he thought of an individual walking to court possibly incriminating herself with her testimony about a crime. And so he wasn't going to make any finding about who'd done it. In this case, though, if there's probative value in an 803 A6 hearing examiner's finding that an attack happened, it makes it very likely that the person who testified, I was there the whole time in a locked room and I was the only one there and I saw the whole thing, is the attacker. And that when that person also testifies, this was just a crazy person who went nuts and started yelling crazy things for no reason, that person is a deliberate and despicable liar. Assistant Attorney General Hayes, in her Westfall certification, said that if there is violence or there is deceit, there is no Westfall certification and this woman should stand alone without the shield of the sovereign behind her as a defendant. The most important facts which dispute the U.S. District Judge's finding that this is an unproven assault also include the completely unexplained knot on Ms. Mansfield's forehead in the color photos taken by the police at the emergency room, the fact that there was some swelling, according to the fact finder, the fact that a trained emergency nurse found edema, the fact that a trained physiotherapist found that her shrug and her reflexes had been rendered abnormal, and the fact that a trained psychologist treated her traumatized psych, which was recognized as a PTSD-like hypervigilant anxiety, reliving an out-of-control trauma which couldn't happen if you did this to yourself. The only explanation offered for why this was an unproven assault by an unproven attacker was the attacker, the alleged attacker herself, Ms. Pfaff, whose view was this was just a doctors don't know their business. And they were just innocent, they were just unwilling dupes of a crazy, berserk individual. And of course, the population least likely to be duped by a crazy person is the population of treating psychologists who are trying to rehabilitate such people. There is no finding up or down. In fact, there is an assertion by the U.S. District Judge that he doesn't have to make any type of evidence or tell anybody what those choices are because they're not material, because there is no possible evidence that is material if the victim can't positively identify her attacker in a sneak up from behind injury. That gets to my question. I think that is what he decided, right? Yeah. I mean, we're crediting, you know, her as honest. She says, I don't know. That was her testimony. I mean, she was so clear that she had no idea who might have attacked her. So then you have, it seems to me it's a question of burden and proof. And with that kind of definitive testimony, I'm having trouble understanding what your point is. Because even if you assume there was or wasn't an attack, you still need to get to who it was. And it's quite clear that we have the, you know, Board of Industrial Insurance Appeals, they don't go there at all. I know you make a lot of citations to them, but my understanding is they don't even make that determination. That's correct. But I think you have the record, you have a mistaken view of the record, Judge, because I don't know is not the testimony. The testimony is, I believe that it was Pfaff, because after I got hit and I spun away, she was standing immediately behind me. And I was attacked from behind. And it was also possible that somebody other than Pfaff. The question... I didn't see anyone. The question posed was, are you absolutely certain it was Pfaff, or is there a possibility it was someone else? Answer, in this case, there's a possibility. Anything is possible, of course. And I don't believe possibilities are relevant evidence that make any fact more likely than not. Other than I believe it was Pfaff, because she was standing right behind me when I spun around, Mansfield gave exhaustive testimony about a number of factors that immediately led up, which was that Mansfield was supposed to make a report to the HR director in charge of Pfaff at 11 o'clock that morning. This attack occurred at 10. Pfaff had just hung up with the HR director to talk about her behavior. Pfaff, the day before, had been reported to the study director for having violated the study protocols by bringing an underage child into an adults-only facility for a blood test, therefore possibly compromising this person's continuing participation in the study. Pfaff had begun cussing at Mansfield, her supervisor, over the course of the several months. And Pfaff, her deficiencies as an employee, had been pointed out on numerous occasions prior, including two other acts in violation of the Institutional Review Board rules on the treatment of human subjects, one mixing controlled substances without a license, which Pfaff was not entitled to do, and the other, which was recruiting people in a public setting without HIPAA protections. So a lot of factors led up to the attack. Mansfield was careful to say, what would make a person erupt into violence? I have no idea. I'm not somebody who can say that. But I do know what happened immediately before, and I do know what happened when I spun around and who was standing there, and who then immediately ran away from the scene of the crime down a stairwell. So your argument is that the judge was wrong because there was a material dispute of fact if you sweep together the circumstantial evidence and all of it together with your client's statement. Is that it? That's correct. And I believe it's clear error to say that the judge also said in his written or oral decision that I don't put any stake in circumstantial evidence under this circumstance because if the victim can't possibly identify the assailant, there's no possible way. And I believe that's clear error. That's a finding that is clearly erroneous and an abuse of discretion. I believe that there are, you know, in addition to the medical facts, I think the briefs handle pretty classically that the police investigated the wrong mechanism of attack when they made their investigation. And instead of an attack from the rear, they've evaluated an attack from the side and impeached that that could have happened when their own investigative reports, Officer Gladson accompanying Mansfield to the scene, excuse me, to the emergency room, heard her say to the emergency room nurses twice, I was attacked from behind and slammed into a desk, not attacked from the side and slammed into the computer keyboard. Because Mansfield's keyboard was situated as I'm facing. If I face 90 degrees to the right, that's where her writing desk and her telephone and her printer were located and that's where she was sitting when she was attacked. That's what she told the ER. She wrote a statement for Officer Gladson in the ER telling him exactly that. And then he came back to the, he escorted her back to her office, said, hey, sit down in this chair, faced her against the computer and then said somewhere in the course of this discussion she suddenly decided that she was attacked a different way because this didn't work. Well, she was answering questions and then demonstrated what really happened, even though they sat her in front of her keyboard to begin with. So the wrong mechanism of attack was evaluated by the police. I'd like to address the second issue, which is the, whether the, was the trial court's Rule 56 dismissal of the 1983 action error because of the disputed facts on the Garcetti issue, that Mansfield reported unlawful public health hazards to the US Veterans Affairs IRB co-chair, Stevens Burns, MD, and his Veterans Affairs public members and did so as a private citizen under the three factors in the Dahlia v. Burbank case. First, she was a UW employee. She, Veterans Affairs was outside her chain of command, outside her UW chain of command, and we are talking about her termination from UW. Second, she was detailing what would more, be more aptly characterized as systemic corruption because she was talking about lawlessness, unlicensed personnel handling controlled drugs. OSHA violated equipment that did not have safety sheaths built into it, needles without sheaths in it, that were needle stick violations, which was a bacterial contamination problem. She was protesting that 60cc syringes, which she said are the size of a turkey baster, were being used to draw blood from these subjects in peripheral veins, which are tiny. And when you are pulling that much suction on a tiny vein, the risk of either withdrawing from the vein and then pushing the needle into the tissue, or collapsing the vein with so much pressure, does not comport with the nursing standard of care that she is required to observe. Let me ask you about the evidence, I'm just trying to put all the pieces together. In your brief, you talk about this January 13, 2011 memo from Dr. Palmer to Berger about the allegations, both to the VA and University IRB, but my understanding was that that document was excluded as inadmissible, is that correct? You are correct that the document was excluded, however the deposition admissions by Dr. Palmer, when he read from his letter, he read the text of it into the record, without objection because we didn't have a marred or illegible version for him during the deposition, and then he answered the following question, after he read, because of reports to the IRBs that I know were made by Pam, I believe she's going to sabotage my research and I want her banned from the facility, the question, why link sabotage with the reports to IRBs, answer, I felt that was one of the things that made me concerned, that she might try to sabotage my research program. So there's a smoking gun linking public interest reports about safety to the IRBs outside the chain of command to sabotage. So you're saying it doesn't matter that the memo was excluded as inadmissible because you have testimony that relies on the memo? We have testimony that relies on a version of the memo that was not illegible and it was excluded because it was illegible. We also have the Exhibit 115, which was the December 28th memo from the IRB saying, Dr. Palmer, you're the subject of a complaint about research methods that are unsafe, they're going to the dual IRBs at VA, and in his handwriting, according to his testimony, he wrote, sabotaged my research. And when asked, why write down sabotaged my research when you get a notice that the IRB is looking into your safety practice, he said, Pam Mansfield has done a lot of things that I'm not happy with. Okay. You might want to save your remaining time. One final sentence on that thought, Judge, which is, he was then asked, you never wrote that you were displeased with sabotage before you got a memo from the IRB and he said, yes, that's the IRB that triggered me writing that. So I'll reserve the rest. Thank you. Thank you. Good morning, Your Honors. Kristen Johnson on behalf of the United States. All right. I have listed here that Mr. Goodfriend is going to argue for seven and a half minutes and you're going to argue for seven and a half. Is that okay with the Court? It's your choice. It never works out very well, but let me, just so that you don't step on his toes or time, ask the clerk if she can put seven and a half for you so you'll know what your time is. Great. Thank you. Thank you. It's clear that under Arthur, when a district court is deciding a Westfall certification, that they have the discretion to hold evidentiary hearings if needed and as necessary to resolve disputed issues of material fact. So I guess what I'd like to start with is the issues that Ms. Mansfield has raised and address whether they were disputed or not disputed, whether they are material or not material to the certification issue. So we understand, but your time is ticking, so you might want to get to it. Okay. First one is the issue regarding her injuries. We have a photograph taken the day of the incident and that is disputed. There are disputed facts about the extent of the injuries in that. Then there's a series of medical records. None of those medical records were disputed at all, so the Court took those as true. Those issues are not material to the question of whether Ms. Pfaff is the one who assaulted Ms. Mansfield. So that's what it really gets to. Do you want to go straight to that? His argument is there's the circumstantial ... You were here. You heard the argument. So do you want to respond to it, please? So all of that circumstantial evidence, the injuries, that just goes to the extent of  We're not talking about that. It's who did it. No, I think we're talking about some of the pre-events that went on that showed the disagreement, the tension in the office, that sort of thing. The circumstantial evidence that would lead to Pfaff. So the only circumstantial evidence that was presented was that there was limited access to Ms. Mansfield during the incident. Only two people in the room. Right. Okay. Well, it is a little conflicting because the testimony from Ms. Pfaff at the BIIA is that she believed they were alone in the room, but the testimony from Ms. Mansfield was that I do not know who came in and out of the room prior to the assault, and I do not know who was in the room at the time of the assault. But I would argue that that's not material because whether or not they're the only two people in the room at the time of the assault does not prove that Ms. Pfaff committed the assault. You just have to prove it. We're just trying to figure out whether the court was right in deciding that she hadn't met her burden of even proving a material issue of fact existed. So you heard him say that, and this really came down to his client not being able to say that she saw who did this, right? But she spun around and said, well, that's the only person here. And there were these other events leading up to. So what is your response to that, please? So I would argue that all of the circumstantial evidence is not material to whether Ms. Pfaff committed the assault. It might show that she was injured that day, but it does not show that Ms. Pfaff committed the assault. Well, why not? Just because the two of them are only in the room, leaves open 50 percent. Okay, so back up. That's not what he said. He said that they're just the two of them are in the room, the allegation that the door is locked. Is that contested? The door is locked, but people have access, there are limited access keys to allow people in and out. Okay. And then, and you heard him say, I hate to take up your time, but you know, you heard him say that there had been increasing tension and hostility and within one hour she was going to make this report about the other person. And so what about all of that? Why isn't that sufficient circumstantial evidence to raise a material issue? That's all I'm asking. Okay. I'm sorry. I misunderstood. That's all right. But I think that's the issue here. Okay. So I think those four factors that he identified really go to Ms. Pfaff's credibility, right? They don't prove that she committed assault. They're trying to prove that she's not a credible person and that she could have. Well, if you think there's a dispute about credibility. I do not. And you think that a hearing, well, yeah, okay. Do you or do you not think there's a dispute about credibility that the court needed to resolve? I do not think that credibility was material and that the court needed to resolve it through an evidentiary hearing. I think the court took his plaintiffs at her word. Correct. Right. As we do and because we don't resolve credibility here. Right. Okay. So back to why was there no need? So even assuming all of these allegations as true, that there may have been a violation of a protection order in Colorado several years ago, that she may have been told the day before about Ms. Mansfield reporting violations about her, that she may have misrepresented how long she was on the phone prior to the attack. They do not prove by a preponderance of the evidence that Ms. Pfaff committed the assault, especially when, in this case, you have Ms. Mansfield who refuses to identify her as the attacker and you have the independent police reports that find it's not possible for Ms. Pfaff to have committed the assault. I understand that, am I, I'm running way. You're okay. No, you're fine. I'm sorry. Still green. The independent police reports that I understand that Ms. Mansfield raised some credibility or some challenges to the police reports, but actually the challenges she raised did not go to the heart of the issue in the police reports that Ms. Pfaff could not have committed the assault. The two factors in those police reports that the judge relied on were that the space between the chair and the bookcase was less than one foot, and Ms. Pfaff could not have physically wedged herself in between the chair and the bookcase, as well as the fact that she was in a high back chair, probably like your honors, and that Ms. Pfaff was 5'7", and could not have physically reached over the chair to grab her head and make it connect with the desk. Does your argument come down to that, no matter how you slice the facts, there's not a preponderance to connect her to the attacker? Right, and that's exactly what the district court found, and I think in this case, because she refused to identify her as the attacker, or was unable to. Well, yeah, I would take issue with saying refusing, I would credit her with being honest. Okay, and unable to identify her, coupled with the independent police reports that the judge found, the credibility attacks on the police reports may have impacted a not-so-great investigation, but did not cause credibility on their ultimate findings that Ms. Pfaff was the one who could not have committed the assault. Thank you. Thank you. So, if you could now put 7-1-1 back on the clock. I understand. I understand. Thank you, your honor. May it please the court, Howard Goodfriend, representing appellees Jerry Palmer and Mara Stevens, Seth Bernson, who was trial counsel in the district court, is at counsel table. Mansfield's complaints, and this was not really discussed at all in Ms. Mansfield's opening, but her complaints were not made as a private citizen. They were made pursuant to her official duties as a research nurse, and addressing matters that were not a broad public concern under the Garcetti test. The district court held that Mansfield's . . . and the reports were not made directly to a BA IRB. That was my question. As I read the record, she made the reports to UW, and it was the UW Human . . . Subjects Division. That actually brought these to the attention of the VA. Is that correct? That's correct. That's correct. They were brought to the attention of both the UW and the VA human subjects, I mean IRBs, because Dr. Palmer's research was subject to their protocols. But not by Mansfield. Not by Mansfield. The way it works is a report of a protocol violation goes to the Human Subjects Division. That's where it goes. And they vet the report, and they do an initial investigation, and they report to the responsible IRB, or IRBs in this case, which are then charged with making a finding and making a recommendation of whether any corrections need to be made. And that's exactly what happened here. But even if the VA Independent Review Board was somehow contacted directly, and as Judge Robar found on reconsideration, it was not, Ms. Mansfield was nonetheless an employee without compensation of the VA. That's why the VA investigated and barred her from the premises. She was subject to their control, and she was basically had to obtain their approval in order to work at a VA project, at a VA funded project on VA premises. So the chain of command would include the VA IRB, even had she made a complaint to them. She did not. With one exception, all her reports were to the University of Washington Human Subjects Division. And that exception was the February 5th, 2011 complaint made to the State Auditor, which Dr. Palmer indisputably was unaware of at any time. And he was not aware of any complaints to anyone until December 28th, 2010, when he was notified by the university's Human Subjects Director that an allegation had been made. Her job description required adherence to steady protocol. Her deposition testimony stated, it's my job to notify the university if IRB violations occurred. She stated that contacting the IRB is her job as a supervisor of Ms. Pfaff. And her emails to the UW Human Resources person, Mr. Berger, as well as to Dr. Palmer, repeatedly confirmed that. The Human Subjects Division's Director, Karen Moe, and the Assistant Director of Compliance at the university, Wendy Brown, as well as others, each confirmed that every university employee involved in independent research board approved research has an obligation to report noncompliance. It was in the manual. And Ms. Mansfield's counsels to Ms. Stevens in advance of the Loudermill pre-termination hearing stated that Ms. Mansfield is a patient safety compliance officer and a VA protocol officer performing assigned duties. So under this Court's test in Dahlia, the speech was within the chain of command. The subject, the nature of the issues addressed were not of, first of all, they arose and it's undisputed that they arose out of this long-running dispute with her subordinate Ms. Pfaff. It started with an allegation that Ms. Pfaff was doing things improperly after, immediately after Ms. Mansfield had been counseled by Dr. Palmer for this systemic workplace grievance that's going on. That's the only thing systemic about the abuse here is that it was an ongoing, long-running dispute and the complaint initially arose as a grievance against Ms. Pfaff. It evolved into an allegation of improper syringe use that was rejected by the RRB when they looked into it. The point, I think, is that these are not issues of systemic corruption or abuse as in the cases where this Court has given complaints First Amendment protection. It's not a matter of public corruption. She didn't go to the press. She didn't go to the state legislators. She went to the state auditor only after she was told to do so, but critically as the District Court found, Dr. Palmer did not know this. So the final factor under Dahlia, I think, is whether the complaints were made after being told not to do so in derogation of the supervisor's statements. No one told her not to make complaints. And in fact, again, Dr. Palmer did not know of them until December 28th. I mean, if you compare this with Eng, the on-bank decision from this Court where someone goes to the LA Times, in FriTag someone goes to a state legislator, we're not even close to that level of protected speech. Let me also add that there is absolutely no issue of fact or argument here today about Mara Stevens, the co-defendant, who was the HR director that sent Ms. Mansfield her termination letter. Absolutely no argument whatsoever about that. Let me also address, in the brief time I have, the argument about intent and causation. There is certainly evidence that Dr. Palmer wanted Ms. Mansfield out of her lab. That is true. And that predates any knowledge he had on December 28th, 2010. She was counseled in 2008. She was counseled again in October of 2010. And he had received not only complaints about her being a disruptive influence and a bad supervisor, but that she had threatened to bring a gun to work. So yes, he wanted her out of the workplace. It's undisputed. All of that predates, predates any knowledge that Dr. Palmer acquired on December 28th, that she had made a complaint to the Human Subjects Division. So I think that fact alone breaks the chain of causation. But the District Court didn't need to go there. You don't need to go there because there is no material issue of fact about whether these statements were subject to First Amendment protection as a private citizen because she was a public employee performing her job as she repeatedly stated. Does the Court have any further questions? There is not. Thank you very much. We ask that you affirm the District Court's summary judgment. Although you've used up your time, I'm going to put a minute back on the clock for your rebuttal. Thank you, Judge. The issues of not going directly to the IRB, not going to the press, not going to the auditor, nobody told her not to. Those are disputed issues and the issue on summary judgment is, is there an inference from the jury that Ms. Mansfield was acting outside her assigned duties? Counsel says nobody ordered her not to go, but Dr. Palmer condemned her as sabotage or said she should pay with her job for going outside the chain of command to the VA IRB and the UW IRB. And just like the jury can infer from Mansfield admitting, I think I have some protocol duties, therefore, you were acting in the scope of your employment, the jury can infer that if the boss says you're absolutely forbidden to go to those agencies, that was not part of her assigned job. That's before the jury. Not going directly to the IRBs but only reporting to HSD is a misreading of the record. It's very important to note that Mansfield's affidavits creating a material issue of fact state I went to the IRB overseers, I went to go to find a higher authority. She said, I started with the IRB, Anthony Floyd, there's a memo in the record to Anthony Floyd, I believe it's November 2 or 4, saying I'm potentially a whistleblower and I'm very but I have faith in your organization. IRB is not an entity of the University of Washington, it is a health and human services mandated watchdog group that is supposed to standardize the safety of human subjects in research periods and the UW has to produce one and the VA has to produce one. There is absolutely no evidence that in also attaching information to the VA IRB that that was a UW assigned job. And there are, the statements of Mansfield are supported in one case by the memo to Anthony Floyd and in the supplemental records we see that she spoke to the SIBCR saying there was a VA IRB violation and that... We'll go back and look at those documents. You've well exceeded your time. Thank you so much. We'll definitely go back and look at those documents. Thanks to all counsel for your argument this morning. The case of Mansfield v. FAF is submitted.
judges: Hawkins, McKeown, Christen